**In the United States District Court
for the District of Kansas**

———————

Case No. 22-cv-02268-TC

———————

ALICIA G.,[1]

*Plaintiff*

v.

MARTIN O'MALLEY,
COMMISSIONER OF SOCIAL SECURITY,

*Defendant*

———————

**MEMORANDUM AND ORDER**

Plaintiff Alicia G. claims that she cannot work due to several physical and mental disabilities. She seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits and Supplemental Security Income benefits pursuant to Title II and Title XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A). For the following reasons, the Commissioner's final decision is affirmed.

**I**

**A**

**1.** Federal district courts have jurisdiction, upon timely request, to review the Commissioner's final administrative decisions. 42 U.S.C. § 405(g). These cases require a careful review of the record to determine whether "substantial evidence supports the factual findings and whether the [administrative law judge] applied the correct legal

---

[1] Plaintiff will be referred to only by first name followed by initials to protect her privacy. *See, e.g.*, *Joseph M. v. Kijakazi*, No. 22-1065, 2023 WL 2241526, at *5 (D. Kan. Feb. 27, 2023).

standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). Evidence in support of a finding is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion," and therefore must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The ALJ's findings must be grounded in substantial evidence and demonstrate that the ALJ "consider[ed] all relevant medical evidence in making those findings." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989)). Consequently, the court will "not reweigh the evidence or try the issues de novo," but it will "meticulously examine the record as a whole . . . to determine if the substantiality test has been met." *Id.*

**2.** To evaluate an application for disability benefits, the Commissioner uses a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4) (disability insurance), 416.920(a)(4) (supplemental security income); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F.3d at 1084). The claimant bears the burden of proof for the first four steps, but the Commissioner does for the fifth. *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset of the disability, whether the claimant has any severe impairments, and whether any of those impairments meets or equals the severity of any impairment in the Listing of Impairments found in 20 C.F.R., Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(a)(4)(i)–(iii), 416.920(a)(4)(i)–(iii); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The fourth and fifth steps of the analysis depend on the claimant's residual functional capacity (RFC), which the Commissioner assesses after completing the third analytical step. 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is the most the claimant can do despite limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1). The Commissioner determines the claimant's RFC based on all relevant evidence in the record. SSR 16-3p, 2017 WL 5180304, at *4–*5 (Oct. 25, 2017).

After analyzing the claimant's RFC, the Commissioner proceeds to the fourth and fifth steps of the analysis. At step four, the Commissioner determines whether the claimant can perform his or her past relevant work in light of his or her RFC. 20 C.F.R.

§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not disabled. *Id.* At step five, the Commissioner bears the burden to show—in light of the claimant's RFC, age, education, and work experience—that suitable work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c)(2), 416.960(c)(2).

**B**

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 15, 2017. Adm. Rec. at 142.[2] At step two, the ALJ identified Plaintiff's severe impairments. He found that she had the following severe impairments: degenerative disc disease, obesity, major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, schizophrenia, and cannabis dependence. *Id.* But the ALJ concluded that some of Plaintiff's other alleged impairments were not severe, including her hypothyroidism, prior thyroid cancer, asthma, insomnia, migraines, and psoriasis. *Id.* at 142–43.

Plaintiff also alleged that she suffered from panic attacks. Adm. Rec. at 143. But allegations alone are insufficient. A severe impairment must also be medically determinable. *See Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The ALJ determined that Plaintiff's panic attacks were not medically determinable, Adm. Rec. at 143, and thus could not be a severe impairment at step two.

At step three, the ALJ found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in" 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. Adm. Rec. at 143. Regarding Plaintiff's spine disorder and obesity, the ALJ found that neither were listed impairments and that no record evidence indicated that either impairment medically equaled a listed impairment. *Id.* at 143–44. The ALJ arrived at the same conclusions for Plaintiff's mental impairments. *Id.* at 144–45.

---

[2] All references to the parties' briefs are to the page numbers assigned by CM/ECF except for factual references to the Administrative Record (Adm. Rec.).

3

At step four, the ALJ determined that Plaintiff had the RFC to perform light work with the following exceptions:

> [S]he can lift and carry up to twenty pounds occasionally and lift or carry up to ten pounds frequently; stand and/or walk for six hours out of an eight-hour workday; and sit for six hours out of an eight-hour workday…occasionally climb ladders, ropes and scaffolds; and can frequently climb ramps and stairs, stoop, kneel, crouch, crawl, and balance…occasionally work at unprotected heights, with moving mechanical parts, in vibration, extreme cold and extreme heat…carry out detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks in a low stress work environment with no fast-paced production requirements involving simple work-related decisions, and with only occasional judgment and work place changes…[and] occasionally respond to and have interaction with supervisors, coworkers and the general public.

Adm. Rec. at 145. At step four, the ALJ determined that Plaintiff had no past relevant work. *Id.* at 151. After considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform. *Id.* Thus, the ALJ concluded that Plaintiff was not disabled from June 15, 2017, through the date of the decision. *Id.* at 152. After exhausting her administrative remedies before the Social Security Administration, Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Doc. 10 at 1–2.

## II

The ALJ's decision is supported by substantial evidence and the Commissioner's final decision is affirmed. The ALJ's assessment at step two was supported by substantial evidence, as was his RFC determination. And no conflict existed at step five that required explanation.

### A

Plaintiff argues the ALJ erred at step two by finding that her hypothyroidism and prior thyroid cancer were non-severe and that her panic

attacks were not a medically determinable impairment. Doc. 10 at 24–25. But the ALJ's conclusions were supported by substantial evidence.

At step two, an ALJ determines whether a claimant has a severe impairment. A severe impairment must be "established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. It must "significantly limit [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522. And it must "have lasted or…be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.

The ALJ concluded some of Plaintiff's impairments met these requirements, but that her thyroid issues did not. Adm. Rec. at 142. He also determined that Plaintiff's panic attacks were not established by medical evidence. *Id.* at 143. Her hypothyroidism led to persistent fatigue, Plaintiff says, so it was severe. Doc. 10 at 25. And since her panic attacks were documented starting in 2018, then diagnosed by Dr. Andrew Kwan in 2021, Plaintiff says they also qualify as severe. Adm. Rec. 115; Doc. 10 at 25. Neither argument is persuasive because substantial evidence supports the ALJ's contrary determinations.

**1.** "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005) (citation omitted). The ALJ's assessment of Plaintiff's hypothyroidism was not a mere conclusion. While the ALJ noted Plaintiff's temporary lack of medication management for her hypothyroidism, Adm. Rec. 142, the record showed that Plaintiff later secured "regular medication management and treatment" which led to "an improved energy level" and an unremarkable physical examination. *Id.* at 142–43. So the ALJ concluded that her controlled fatigue did not significantly limit her ability to perform basic work activities. *Id.* at 143.

Other evidence in the record does not overwhelm this assessment. Plaintiff notes that her improved energy level and "unremarkable" examination coincided with nausea and weight gain of 20 pounds. Doc. 10 at 24. This argument invites reassessment of the ALJ's conclusions about Plaintiff's nausea and weight gain. A federal court cannot do so because it "review[s] only the sufficiency of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007).

The same is true of Plaintiff's other arguments on this front. For example, she points out that an ultrasound in November 2021 revealed

5

a "small amount of residual thyroid tissue" and "one concerning lymph node," that later presented signs of cancer. Doc. 10 at 24. Perhaps this evidence should have concerned the ALJ. But he considered medical evidence of Plaintiff's thyroid conditions, Adm. Rec. at 142–43, and nonetheless concluded that her hypothyroidism did not impact her ability to perform basic work activities, *id.* A reviewing court lacks the authority to second guess that judgment. *Oldham*, 509 F.3d at 1258.

Plaintiff also points to evidence that the ALJ did not consider, but it fails to overwhelm the evidence that was before him. In December 2021—three days before the ALJ's decision—Dr. Kwan assessed chronic fatigue, consistent with other reports of chronic fatigue in Plaintiff's medical history. Doc. 19 at 2. He also recorded Plaintiff's thyroid stimulating hormone (TSH) level. *Id.* The parties are not sure which TSH level was recorded in December 2021: Plaintiff points to lab results from December 21 reflecting a level of 0.013, Doc. 10 at 24–25; Adm. Rec. at 14, but the Commissioner cites a different report, from December 17, which reads "[p]revious TSH noted to be slightly low at 0.129[,]" Doc. 14 at 12; Adm. Rec. at 115. The latter citation appears to reference to Plaintiff's October results, not fresh December results. At any rate, Plaintiff does not explain why the disputed TSH levels undermine the ALJ's decision. Presumably, TSH is one way to estimate the severity of her hypothyroidism. But the ALJ addressed Plaintiff's thyroid condition and chronic fatigue, noting her "improved energy level" and unremarkable physical examination. Adm. Rec. at 142–43. Plaintiff's new evidence is not enough, on its own, to displace this judgment.[3] *Oldham*, 509 F.3d at 1258.

**2.** The ALJ's determination that Plaintiff's panic attacks were not medically determinable, and therefore not a severe impairment, was supported by substantial evidence. "[A] medically determinable impairment 'must be established by objective medical evidence from an

---

[3] The parties also reference Plaintiff's post-decision treatment for recurrent cancer. Doc. 10 at 25; Doc. 14 at 12. Since this evidence postdates the ALJ's decision, it is useful only in a challenge to the Appeals Council's decision. *See, e.g.*, *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011). But Plaintiff does not appear to challenge the Appeals Council's decision. Doc. 19 at 1. Since this evidence was not before the ALJ, and Plaintiff challenges only his decision, this evidence is not considered. *Anderson v. Dep't of Labor*, 422 F.3d 1155, 1174, 1182 n. 51 (10th Cir. 2005) (noting that a plaintiff waives any argument not raised in his or her opening brief).

acceptable medical source'; it cannot be established by a claimant's 'statement of symptoms.'" *Rivera v. Comm'r, SSA*, No. 22-1026, 2022 WL 17333068, at *3 (10th Cir. Nov. 30, 2022) (citing 20 C.F.R. § 404.1521).

The ALJ found that Plaintiff's panic attacks were not medically determinable. That is, the record did not "include sufficient objective medical evidence" to support this impairment. Adm. Rec. 143. Plaintiff disagrees, arguing that the record was adequate. Doc. 10 at 25. She had a diagnosis, provided by Dr. Kwan three days before the ALJ's report in December 2021. Adm. Rec. 115. And she reported panic attacks multiple times, starting in June 2018. Adm. Rec. at 499 ("reports 'panic attacks'"). So Plaintiff reasons that there was evidence her panic attacks impaired her ability to work for more than 12 months, making her condition both medically determinable and severe. Doc. 10 at 25.

But the question is whether "medical signs and laboratory findings demonstrate[ed] the existence of a medically determinable physical or mental impairment." SSR 96-4p. Plaintiff's reports do not themselves establish an impairment, *Spicer v. Barnhart*, 64 F. App'x 173, 177 (10th Cir. 2003), and her documented medical signs are insufficient. The ALJ concluded in part that Plaintiff's allegations were "symptoms" rather than "medically determinable impairments." Adm. Rec. at 143. Dr. Kwan's diagnosis does not undermine the ALJ's conclusion that Plaintiff's older allegations merely describe symptoms of her other conditions. And Dr. Kwan's diagnosis alone does not show that Plaintiff's panic attacks "lasted or…[were] expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.

Moreover, any error regarding Plaintiff's panic attacks would be harmless. The ALJ recognized Plaintiff's subjective complaints and found them inconsistent with "her conservative treatment history and the clinical signs and findings." Adm. Rec. 148. The additional evidence Plaintiff adduced shows that she was diagnosed with panic attacks, *id.* at 115, and was managing them well within three months, *id.* at 108. Even if her panic attacks were a medically determinable impairment, they do not appear to have worsened after Plaintiff's diagnosis. On the contrary, she received effective treatment. *Id.* at 108.

Plaintiff disagrees, indicating that her panic attacks would compel additional limitations: "Dr. McRoberts and Dr. Blum both opined additional limitations including being limited to 1-2 step instructions." Doc. 19 at 3. But the ALJ considered and rejected those portions of

McRoberts' and Blum's opinions. Adm. Rec. 149. Similarly, he considered evidence from before she received treatment and nonetheless concluded that her complaints were inconsistent with her activities, treatment history, and other clinical signs. Adm. Rec. 148. Accordingly, Plaintiff's additional evidence adds little beyond a diagnosis. And a diagnosis, standing alone, does not undermine the ALJ's RFC calculation. Even if her panic attacks were medically determinable, failure to include them at step two was harmless. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

## B

Plaintiff also contests her assessed RFC, arguing that both the mental and physical limitations imposed are unsupported by substantial evidence. The ALJ adequately addressed each limitation, so these allegations are not grounds for reversal.

**1.** Plaintiff objects to the ALJ's RFC assessment regarding her mental capacity for three reasons. Doc. 10 at 25–29. None are persuasive.

First, Plaintiff contests the ALJ's treatment of two experts. These experts—doctors Blum and McRoberts—opined that Plaintiff was moderately limited in her ability to "understand, remember, and carry out detailed instructions." Doc. 10 at 26. In their view, this limitation allowed for only one or two-step instructions. The ALJ found these experts partially persuasive. Adm. Rec. at 148. And he did not reject their findings about concentration, persistence, and pace. *See id.* at 149. So, Plaintiff says, greater limits were required—and their absence is an inconsistency requiring reversal. Doc. 10 at 26.

But the ALJ rejected the experts' proposed limit. They assessed moderate limitations and therefore found that Plaintiff was limited to one to two-step instructions. Adm. Rec. at 150. The ALJ rejected the proposed limit (i.e., one to two-step instructions) and thus necessarily rejected the conclusion that Plaintiff was moderately limited in her ability to follow detailed instructions. *See, e.g.*, Adm. Rec. at 200 (finding Plaintiff "[m]oderately [l]imited" and therefore "able to understand and remember one and two-step instructions").

8

Instead, the ALJ confined Plaintiff's ability to follow more than one or two step instructions to a specific context. In tasks that were "simple, routine, [and] repetitive," she was able to follow "detailed but uninvolved" instructions. Adm. Rec. at 151. This kind of contextual limit is a permissible way to address evidence of moderate limitations in a claimant's ability to follow instructions. *See Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016). And it indicates that the ALJ did not fail to limit Plaintiff's "ability to carry out detailed instructions." *Contra* Doc. 10 at 26; *cf. Kathleen B. v. Saul*, No. CV 19-1219-JWL, 2020 WL 3076598, at *6 (D. Kan. June 10, 2020) (finding that a limitation to "simple, routine, and repetitive tasks" addressed a limitation to one and two step instructions).

Second, Plaintiff contends that even if the ALJ properly omitted limitations on Plaintiff's ability to follow detailed instructions in the RFC, he failed to explain his decision. Doc. 10 at 26. The ALJ did not explicitly reject the portions of McRoberts' and Blum's opinions finding her "moderately limited in maintaining attention and concentration." Adm. Rec. 150. Yet, Plaintiff says, an ALJ must explain why he rejects a medical opinion when that opinion is not reflected in the RFC. Doc. 10 at 26 (referencing SSR 96-8p).

Plaintiff correctly states the law. But the ALJ explained his decision by necessary implication, so there is no error. As explained above, the experts limited Plaintiff to one and two-step instructions because they found she had moderate mental limitations. One evaluation explained Plaintiff's moderately limited "ability to understand and remember detailed instructions" by stating that she "is able to understand and remember one to two-step instructions." Adm. Rec. 221. Another evaluation offered a nearly identical explanation. Adm. Rec. 200. Thus, the ALJ's explanation of why he "found Plaintiff could do more than one- to two-step instructions" extended to the experts' conclusions regarding "moderate limitations in detailed instructions." Doc. 14 at 17. That is, when the ALJ explained that Plaintiff could perform more than one and two-step instructions, he also explained why she was not moderately limited as expressed by the experts. *See* Adm. Rec. 150 ("[T]he limitation to one to two step instructions is inconsistent with the claimant's activities of daily living…."); *Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (noting that an ALJ need not use the same language as an expert).

Third, Plaintiff contends that the ALJ's "RFC as to Plaintiff's mental functional limitations [is]…unsupported." Doc. 10 at 27. The ALJ

9

rejected portions of McRoberts' and Blum's opinions "based on Plaintiff's activities of daily living." Doc. 10 at 27. But he did not explain "*how* Plaintiff's ability to use the internet, shop, drive, and manage her own finances" was inconsistent with the experts' opinions that she was limited to one and two-step instructions. Doc. 10 at 27. So, she says, the RFC is unsupported. It is true that an ALJ cannot use a conclusory reference to daily activities to reject an expert as unpersuasive. *Ringgold v. Colvin*, 644 F. App'x 841, 845 (10th Cir. 2016). The ALJ's reference was not conclusory, however, because he explained that Plaintiff's activities—for example, driving and managing her finances—"limit her to simple, routine and repetitive tasks." Adm. Rec. 150.

Likewise, Plaintiff is correct that an ALJ cannot use activities of daily life as, for example, "substantial evidence that a claimant does not suffer disabling pain." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (citation omitted); *see also Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983); Doc. 10 at 26–27. But the ALJ's conclusions were not so extreme. He merely found that Blum and McRoberts's "limitation to one to two step instructions is inconsistent with [Plaintiff's] activities[.]" Adm. Rec. at 150. Plaintiff suggests that the ALJ failed to consider that her "activities were done at [her] convenience, without a specific standard of performance, at [her] speed, etc." because he reached a different conclusion from McRoberts and Blum. Doc. 10 at 27. But the fact that the ALJ disagreed with an expert does not mean that he lacked substantial evidence for his conclusion. And unlike in some debilitating pain cases, it is plausible that Plaintiff's activities are inconsistent with a limitation to one and two step instructions. *Cf. Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987) ("[Claimant] testified that he cannot sit, stand, walk, or drive a car for more than a brief interval…and [that] he does only minor household chores…[t]his lifestyle does not contradict a claim of disabling pain.").

**2.** Plaintiff also asserts that the ALJ erred in assessing her RFC because the physical limitations it imposes are unsupported by substantial evidence. Doc. 10 at 29–31. But the ALJ's assessment of Plaintiff's physical limitations is supported.

The ALJ found the opinions of Dr. Merrill and Dr. Eades partially persuasive as to Plaintiff's physical capacity. Adm. Rec. at 148. But he found a similar opinion from Plaintiff's own expert, Dr. Kwan, unpersuasive. *Id.* Eades and Merrill opined that Plaintiff could perform "medium" work. *See id.* at 198–99, 219. Kwan believed that Plaintiff "was at imminent risk of going into a nursing facility." *Id.* at 148. Ultimately,

the ALJ found that Plaintiff could perform "light" work. *E.g.*, *id.* at 150.

Plaintiff argues that the ALJ did not "relate the evidence to his findings regarding the medical opinions, or cite specific facts to describe how the evidence supports each RFC conclusion." Doc. 10 at 30 (citation omitted). Thus, Plaintiff says, "[t]he ALJ…failed to 'connect the dots as required by SR 96-8p.'" Doc. 10 at 30 (citing *Kency v. Barnhart*, Case No. 03-1190-MLB (D. Kan. Nov. 16, 2004)). SSR 96-8p provides that an "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." Only after this preliminary step may the ALJ express an RFC "in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy."

Contrary to Plaintiff's argument, *see* Doc. 10 at 30, the ALJ connected the evidence to his finding that Plaintiff could perform "light" work. For example, the ALJ's opinion summarized Plaintiff's treatment history in the context of her gait and balance. Adm. Rec. at 147. It also discussed Plaintiff's degenerative disc disease. *Id.* at 146. It then explained that "clinical signs and findings and her conservative treatment history [were] inconsistent with disabling low back pain or the need for a cane to ambulate, balance, or stand." *Id.* at 146–47. These conclusions accompanied specific references to the medical evidence. For example, the ALJ's opinion noted that "objective diagnostic testing is inconsistent with the intensity and frequency of pain alleged." *Id.* at 146.

Plaintiff also argues that the ALJ did not develop the record "fully and fairly." Doc. 10 at 30. To the extent that the ALJ adopted Eades and Merrill's opinions, Plaintiff argues, those opinions did not provide substantial evidence to support the ALJ's decision. Doc. 10 at 30. This view is mistaken; the ALJ developed the record as required.

An ALJ must explain how the "supportability" and "consistency" of a medical opinion affects his or her determination. 20 C.F.R. § 404.1520c(b)(2). But the ALJ need not march through every finding made by each source. 20 C.F.R. § 404.1520c(b)(1). And contrary to Plaintiff's suggestion, the ALJ's opinion discussed the extent to which the experts' opinions were consistent with other reports. Adm. Rec. 147. It also determined that the suggested limits were supported by the experts' narrative reports in some respects, and specifically referenced the evidence informing the RFC determination. *Id.* For example, the

11

ALJ rejected opinions that Plaintiff could perform medium work because of her "occasionally limited and tender low back as well as…mild objective abnormalities." *Id.* at 148.

Plaintiff also objects to specific portions of the expert evidence. She says that Dr. Eades is a gynecologist who is not able to opine on degenerative disc disease. Doc. 10 at 30–31. Likewise, she argues that Dr. Merrill did not consider Plaintiff's obesity. *Id.* at 31. And his record was from a year prior to the ALJ's decision, so it did not "consider[] all the evidence of record." *Id.* Neither objection is persuasive.

Dr. Eades' specialty does not make her unqualified. 20 C.F.R. § 404.1520c(c)(4) (noting only that a specialist's opinion "may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty"). Likewise, while a physician's treating relationship with a claimant is relevant, 20 C.F.R. § 404.1520c(c)(3)(v), this factor is not determinative, 20 C.F.R. § 404.1520c(b)(2); *contra* Doc. 10 at 30. More importantly, it is less important than supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Eades' opinion was consistent with Merrill's, and both opinions recommended limits "consistent with the other clinical signs and findings" in the record. *See* Adm. Rec. at 148, 150. Plaintiff adds that Merrill's opinion was stale. Doc. 10 at 31. Although stale opinions can be concerning, *see Chapo v. Astrue*, 682 F.3d 1285 (10th Cir. 2012), she does not identify what limitations appeared after Merrill's opinion that would contradict his conclusions.

Nor does the ALJ's analysis suggest that he "failed to identify any medical or other evidence supporting his conclusion Plaintiff can perform 'light' work." *Contra.* Doc. 10 at 7. He worked through the available evidence of Plaintiff's limitations. Adm. Rec. 146–49. And he credited portions of Eades' and Merrill's opinions because their proposed limitations were consistent with their findings of "full strength, a normal gait, and negative straight leg raising." Adm. Rec. 148.

Plaintiff objects, arguing that these findings were erroneous and thus that the ALJ should have discredited more of Eades' and Merrill's opinions. Doc. 10 at 31. But courts cannot "reweigh[] … the evidence and … substitute [their] judgment for that of the Commissioner." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). Plaintiff has not identified any records that are missing or any conflicts in the evidence. Nor has she presented evidence of more extensive postural and

environmental limitations. For example, Plaintiff argues that she used a cane for balance rather than gait. *Contra* Doc. 10 at 31. But the two concepts overlap. And as Plaintiff recognizes, "straight leg raising" tests presented different evidence at different times. Doc. 10 at 31. While Plaintiff identifies a particular instance of decreased strength, the ALJ's finding was "generally full strength," indicating that he incorporated the balance of the evidence rather than a single result. Adm. Rec. 148.

## C

Plaintiff argues the ALJ erred at step five by failing to explain or resolve conflicts between Plaintiff's limitations and available jobs. Doc. 10 at 31–35. But Plaintiff's limitations did not conflict with the vocational expert's list of available jobs, so the ALJ's ultimate decision is supported by substantial evidence.

At step five, "the burden of proof shifts to the Commissioner" to show that a claimant has the RFC "to perform work in the national economy, given her age, education, and work experience." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation and internal quotation marks omitted). An ALJ may rely on a "vocational expert" to answer this question. *See Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009). Vocational experts "provide evidence at hearings before [ALJs]," including information from the "Dictionary of Occupational Titles" (DOT). *See* SSR 00-4p. "An ALJ must resolve conflicts between the VE's testimony and the DOT." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 909 (10th Cir. 2023).

Plaintiff raises five issues with the ALJ's step five findings. First, she argues that the RFC itself was flawed, meaning the ALJ's question to the vocational expert must have been flawed. Doc. 10 at 32. But as explained, the RFC was not flawed. *See supra* Section II.B.

Second, Plaintiff claims that the vocational expert testified inconsistently with the DOT. The vocational expert listed "price marker" as an available job, but Plaintiff says that her limitations are inconsistent with its demands. The job of "price marker" requires "[a]ttaining precise set limits, TOLERANCES, and standards." Doc. 10 at 33. Plaintiff argues that this description requires an ability to perform "fast-paced or production-quota work." *Id.* But Plaintiff cannot perform fast-paced production requirements. *Id.* So, she says, the vocational expert's

13

testimony was inconsistent with the dictionary of occupational titles—and the ALJ did not resolve this conflict. *Id.*

But there is no apparent conflict. Price markers' "T" temperament limitation "[i]nvolves adhering to and achieving exact levels of performance, using precision measuring instruments, tools, and machines to attain precise dimensions; preparing exact verbal and numerical records; and complying with precise instruments and specifications for materials, methods, procedures, and techniques to attain specified standards." DOT § 209.587-034. The DOT definition does not set a pace for work. Nor does it speak to whether a "production-quota" is involved. Accordingly, there was no apparent conflict for the ALJ to resolve.

Third, Plaintiff argues that the vocational expert testified inconsistently with the DOT because "[t]he ALJ limited Plaintiff to only occasional interaction with supervisors." Doc. 10 at 33. But "[t]he job of cleaner, housekeeping…requires the employee to be able to work under specific instructions." Doc. 10 at 33. Plaintiff therefore argues that the vocational expert should have—but did not—explain how she could work under specific instructions while limited to only occasional interaction with supervisors.

Once again, there was no inconsistency between the housekeeping job and Plaintiff's limitation to only occasional interaction with supervisors. The DOT description suggests that housekeepers and cleaners do not spend a significant amount of time talking or taking instructions. Specifically, it provides that housekeepers and cleaners need only "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT § 323.687-014. Nothing in the DOT's description suggests that the ALJ failed to reconcile Plaintiff's limitations with the demands of the proposed job. *See* Doc. 14 at 26 (pointing out that the DOT description for a "cleaner, housekeeper" "requires the least possible interaction with others," on an eight-point scale).

Fourth, Plaintiff argues that "[t]he ALJ limited Plaintiff to occasional workplace changes" but proposed "price marker" and "router" as available jobs. Doc. 10 at 34. She contends that only "reasoning level [one]" jobs require "occasional"—as opposed to more frequent—workplace changes. *Id.* at 35. But router and price marker are reasoning level two jobs, because they require an employee to "[a]pply

14

commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." DOT §§ 222.587-038, 209.587-034. Thus, Plaintiff argues that level two jobs should have been seen as inconsistent with her RFC.

But Plaintiff's RFC is consistent with reasoning level two jobs. She can "carry out detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks," Adm. Rec. 151, as can price markers and routers, DOT §§ 222.587-038, 209.587-034. Thus, the ALJ did not fail to reconcile an inconsistency in this context. The proposed jobs are consistent with the Plaintiff's RFC. *Cf. R.S. v. Saul*, Case No. 20-2416-SAC, 2021 WL 2156412, at \*9 (D. Kan. May 27, 2021) (plaintiff limited to simple tasks *and* simple instructions likely could not perform reasoning level two jobs).

Fifth, Plaintiff identifies an inconsistency between the identified jobs and her reasoning limitations. But it was not inconsistent for the vocational expert to identify reasoning level two jobs (router, price marker) as available to Plaintiff. Plaintiff cites *McNary v. Saul*, which was allegedly "remanded for resolution of [a] conflict between limitation to simple, routine work with [a] reasoning level 2 job." Doc. 10 at 35 (citing *McNary v. Saul*, No. 19-02105-EFM, 2020 WL 5942283, at \*2 (D. Kan. Oct. 7, 2020)). But *McNary* found that "there is no binding judicial precedent holding that an RFC limited to simple instructions is inconsistent with level-two jobs." 2020 WL 5942283, at \*2. Moreover, as explained above, Plaintiff's ability to "carry out detailed but uninvolved instructions," Adm. Rec. 151, is not inconsistent with a need to "carry out detailed but uninvolved written or oral instructions…." *See* DOT § 222.587-038.

### III

For the foregoing reasons, the Commissioner's final decision is affirmed.

It is so ordered.

Date: January 4, 2024                             s/ Toby Crouse
                                                                  Toby Crouse
                                                                  United States District Judge